

May 13, 2021

Freedom of Information Act Request

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
2201 C Street, NW
Suite B266
Washington, DC 20520
FOIArequest@state.gov

**Re: Records Concerning Provision of Funding to the Palestinian Authority**

Dear FOIA Officer,

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* (FOIA), from the Protect the Public's Trust (PPT), a non-profit organization dedicated to promoting ethics in government and restoring the public's trust in government officials.

The Taylor Force Act is a U.S. law that prevents American economic aid from being provided to the Palestinian Authority (PA) until the PA ceases paying stipends through the Palestinian Authority Martyr's Fund to individuals who commit acts of terrorism and to the families of deceased terrorists. The law was signed into law in March 2018 by President Trump. Congress also passed and President Trump signed another law called the Anti-Terrorism Clarification Act of 2018. This law allows Americans to sue in US courts those receiving US foreign aid over alleged complicity in "acts of war." The fear of such lawsuits has led to a reduction of as much as $60 million in annual funds being provided to the PA.

As reported in the Washington Examiner and other media outlets on April 7, 2021, Secretary of State Anthony Blinken announced an intention to resume aid for Palestinians despite concerns that funds may be used to finance terrorism. One aspect of the newly proposed funding is $150 million for the United Nations Relief and Works Agency for Palestinian Refugees (UNRWA). According to the Israeli Ambassador to the U.S. Gilad Erdan and an Isreali education watchdog, "the UNRWA's educational curriculum promotes terrorism….and is, in places, more extremist than PA material it complements."



When questioned, State Department spokesman Ned Price said, "We take all of that scrupulously into account." Additional funding from the U.S. Agency for International Development (USAID) also appears to be part of the Administration's proposed expenditures. The Government Accountability Office has also written about the perils of providing such funding to individuals or entities associated with terrorism without the appropriate controls in place for oversight.

In the past several days media outlets have reported a significant uptick in terrorist activity targeting Israel. For instance, today *Newsweek* reports, "Israel Under Attack as Nearly 1,000 Rockets Intercepted in 38 Hours." The article describes the situation as "enter[ing] its worst stage of violence in years." Within weeks of new funding being announced and potentially distributed by the State Department to the Palestinian Authority, this resurgence of terrorist attacks connected to Palestinian terrorist efforts raises several serious questions of whether the funding violates any existing US laws.

The public has a strong interest in understanding how the proposed funding is being spent, when it was distributed, what oversight controls exist to track the funds, and what internal discussions were had among senior Administration officials prior to the decision to re-initiate funding in the face of the GAO's express concerns about inherent weaknesses in existing oversight controls. Thus, we are requesting the following records on an expedited timeline to ensure US taxpayer dollars are not being used to fund international terrorist activities and senior government officials are not violating the letter or spirit of the law in providing such aid.

### Records Requested

PPT requests the following records relating to Secretary of State Blinken's decision to re-initiate funding to the Palestinian Authority in potential violation of the Taylor Force Act:

1.      Meeting Requests: All records for meeting requests, meeting memos, briefing documents, schedules, communications, and any other records related to the decision to re-initiate funding to the Palestinian Authority either directly or through the UNRWA. This should include any meetings to discuss the legality and oversight controls in place as it pertains to the Taylor Force Act, Anti-Terrorism Clarification Act of 2018, or other relevant laws or U.S. policies.

2.      Internal Communications: All communications within, among, and between officials involved in the decision announced on April 7, 2021 to re-initiate funding to the Palestinian Authority, including any legal, policy, or budgetary analysis on the U.S. government's ability to track



the funds to ensure compliance with the Taylor Force Act. At a minimum, the records of Secretary Blinken, Ned Price, and all political appointees in the Office of the Secretary and Office of the Legal Advisor should be searched for responsive records.

3.    External Communications: Any and all communications between State Department officials and those within the Administration, including the White House, Ambassador to the United Nations, National Security Council, USAID that may have been consulted on the decision to re-institute funding to the Palestinian Authority. This should also include any communications on the topic with individuals or entities outside of the federal government, including Samantha Power or officials prior to joining the Administration.

4.    Virtual platform meetings and logs: Any and all records created or produced by the State Department's authorized virtual platform such as Zoom, Microsoft Teams, or other service, that relates to or concerns the decision to provide funds to the Palestinian Authority or UNRWA. This includes any discussion or analysis that was conducted on the applicability of the Taylor Force Act or other relevant legal or programmatic restrictions.

For this request, the term "all records" refers to, but is not limited to, any and all documents, correspondence, emails, text messages, letters, notes, telephone records, telephone notes, minutes, memoranda, comments, files, presentations, consultations, biological opinions, assessments, evaluations, schedules, telephone logs, digital logs such as those produced by Microsoft Teams or similar authorized virtual platform, papers published, and/or unpublished, reports, studies, photographs and other images, data (including raw data, GPS or GIS data, UTM, LiDAR, etc.), maps, and/or all other responsive records, in draft or final form.

This request is not meant to exclude any other request that, although not specifically requested, are reasonably related to the subject matter of this request. If you or your office have destroyed or determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under the FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption. FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).



Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

PPT is willing to receive records on a rolling basis.

These communications could be very relevant to ensuring that US taxpayer funds are being wisely and consistent with US law. Given the potential that federal funds are being used to advance terrorist activities in violation of US law, it is imperative that the Department turn over the records immediately. Therefore, we are requesting expedited processing for these records. In order to most efficiently facilitate our request, we request that the FOIA office use the Department's authorized email management system to search and process this request.

Finally, FOIA's "frequently requested record" provision was enacted as part of the 1996 Electronic Freedom of Information Act Amendments, and requires all federal agencies to give "reading room" treatment to any FOIA-processed records that, "because of the nature of their subject matter, the agency determines have become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2)(D)(ii)(I). Also, enacted as part of the 2016 FOIA Improvement Act, FOIA's Rule of 3 requires all federal agencies to proactively "make available for public inspection in an electronic format" "copies of records, regardless of form or format ... that have been released to any person … and … that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D)(ii)(I).  Therefore, we respectfully request that you make available online any records that the agency determines will become the subject of subsequent requests for substantially the same records, and records that have been requested three or more times.



### Format of Requested Records

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. See, e.g., 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. See 5 U.S.C. § 552(a)(3)(B). We ask that you please provide all records in an electronic format. Additionally, please provide the records either in (1) load-ready format with a CSV file index or Excel spreadsheet, or; (2) for files that are in .PDF format, without any "portfolios" or "embedded files." Portfolios and embedded files within files are not readily accessible. Please do not provide the records in a single, or "batched," .PDF file. We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. § 552(b). Please correlate any redactions with specific exemptions under FOIA.

### Fee Waiver Request

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as PPT access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ...." 132 Cong. Rec. S. 14298 (statement of Senator Leahy).



I. PPT Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The State FOIA regulations at 22 C.F.R. § 171.16(a)(1)-(2) establish the same standard.

Thus, State must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 22 C.F.R. § 171.16(a)(1)-(2). As shown below, PPT meets each of these factors.

A. The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of State. This request asks for: Critical information pertaining to the decision to re-institute funding to the Palestinian Authority, potentially in violation of US law.

B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow PPT to convey to the public information about whether high-ranking officials charged with formulating foreign policy are properly and wisely considering the legal restrictions on expending federal funds that may be used to support international terrorist activities. After disclosing the requesting records, PPT will inform the public about their findings in order to ensure decisions are being made consistent with the law. Once the information is made available, PPT will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of State operations and activities.

C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the State Department and US Government's Compliance with Laws Aimed at Preventing the Financing of Terrorist Activity.



The requested records will contribute to public understanding of the State Department and senior Administration officials' compliance with and analysis of the legal restrictions that exist to prevent US taxpayer funding of international terrorist activity. As explained above, the records will contribute to public understanding of this topic.

Ensuring that federal funds are spent wisely and consistent with US law in order to prevent the financing of terrorism is a critical aspect of US foreign policy and long-standing human rights interests supported by the American public. PPT will use the information it obtains from the disclosed records to educate the public at large about whether senior officials are properly considering these obligations. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through PPT's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which concern the potential financing of international terrorist activity in violation of US law. We also are unaware of these records having been released to date. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations...."

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of what actions senior Administration and State Department officials are taking to ensure federal funds are not used to violate US law and finance terrorism. The public is always well served when it knows how the government conducts its activities, particularly matters touching on funding questions concerning terrorism.



Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about whether a change in US policy is contributing to the increased terrorist activity seen now in Israel and Palestine.

D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

PPT is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the potential for taxpayer dollars to be used for illegal terrorist purposes and destabilize a critical region of the world as compared to the level of public understanding that exists prior to the disclosure. Indeed, public understanding will be significantly increased as a result of disclosure.

The records are also certain to shed light on State's compliance with its own mission and responsibility to protect our nation and conduct foreign policy in a legally compliant

manner. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, PPT meets this factor as well.

II. PPT has the Ability to Disseminate the Requested Information Broadly.

PPT is a non-profit organization that informs, educates, and counsels the public about the importance of government officials acting consistently with their legal obligations. A key component of being able to fulfill this mission and educate the public about these duties is access to information that articulates what obligations exist for senior government officials and those officials consideration of those obligations. PPT intends to publish information from requested records on its website, distribute the records and expert analysis to its followers through social media channels including Twitter, Facebook, and other similar platforms. PPT also has a robust network of reporters, bloggers, and media publications interested in its content and that have durable relationships with the organization. PPT intends to use any or all of these far-reaching media outlets to share with the public information obtained as a result of this request.

Through these means, PPT will ensure: (1) that the information requested contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that PPT possesses the expertise to explain the requested information to the public; (4) that PPT possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes PPT as a reliable source in the field of government ethics and conduct.

Public oversight and enhanced understanding of State's duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the



information to a reasonably broad audience of persons interested in the subject. *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). PPT need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for PPT to show how it distributes information to the public generally. *Id*.

### III. Obtaining the Requested Records is of No Commercial Interest to PPT.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to PPT's role of educating the general public. PPT is a 501(c)(3) nonprofit organization with supporters and members of the public who seek a transparent, ethical and impartial government that makes decisions in the best interests of all Americans, not former employers and special interests. PPT has no commercial interest and will realize no commercial benefit from the release of the requested records.

### IV. Conclusion

For all of the foregoing reasons, PPT qualifies for a full fee waiver. We hope that the Department will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at foia@protectpublicstrust.org. All records and any related correspondence should be sent to my attention at the address below.

Sincerely,

Morgan Yardis
Research and Publication Associate
foia@protectpublicstrust.org